Case number 21-1062 et al. Ydil W. Pham, Petitioner v. National Transportation Safety Board and Federal Aviation Administration. Mr. Armstrong for the Petitioner, Mr. O'Connell for the Respondent, FAA. Good morning, Counsel. Mr. Armstrong, please proceed when you're ready. May it please the Court, my name is Allan Armstrong. I represent Ydil Pham, the Petitioner in case number 21-162 and the Respondent in 21-3. Mr. Armstrong, can I ask you just to slide over in front of the microphone? Yes, sir. Thank you. Mr. Pham appeals from an order of the National Transportation Safety Board of January 4, 2021, finding he had refused a Department of Transportation drug test by failing to remain to complete the test after he provided a urine specimen that was less than the amount required by the regulations, which I think is 45 milliliters. The Board made a finding of violations of 49 CFR 4191A2, failing to remain, and 120.70, engaging in conduct, but reduced the sanction from a revocation to a suspension of 180 days. This is authorized by 14 CFR 120.11, subparagraph B2. The Board's order must be vacated as not being supported by substantial evidence. On August 11, 2020, Mr. Pham reported for a DOT drug test providing less than 45 milliliters, and the DOT regulations require, it says must, must urge, require the test collector, in this case Lois West, to warn Pham he has three hours to consume 40 ounces of fluid to provide the specimen. She did not give the warning. On page Joint Appendix 277 and 296, she said not once, but twice, I don't remember. I'm not sure. That's your unimpeached testimony in the record. Yes, Counsel, but I guess the question is the materiality of that finding. So why does that matter with respect to the facts that were found concerning his refusal, which did not include any sort of concern about the omission of what you're calling is the shy bladder instruction? Is that what? Yes. So I did not take any of the bodies that have reviewed this matter to put any real weight on the shy bladder omission with respect to the refusal. They say regardless, he knew that if he left, that was going to be considered a refusal, and he did. So why are those the material facts for the finding of refusal? Judge Jackson, thank you for your question. Here's my response. You cannot read 49 CFR 4191A2 in a vacuum. You have to read it in the context of 49 CFR 193B2, which says that she must urge him to consume 40 ounces of fluid over three hours. And he testified twice in the record at pages 370 and page 371 in the record. He testified. Had he given that warning, he would have remained at the facility. And that's just like Dr. Pasternak and Pasternak versus Huerta and Pasternak versus NTSB quoted in my brief, Your Honor. I thought the Pasternak case had some important differences, though. I don't think so. I really don't think so, Your Honor. Well, first of all, weren't the guidelines different at that time that they had to give the warning about leaving being a refusal, and they didn't in this case? Here's how I see Pasternak in relation to Pham, Your Honor. And Pasternak maletalvo said he ran out before I could give him the warning. And the board said that we are relying upon her credibility to find Pasternak is guilty. And this court, this court said that's not material because it's implausible that she could not give him a warning. He can't run that fast. And by the same token, in this situation, we cannot ascribe credibility to Ms. West because she has not. The board said, number one, she had no independent recollection of the events of that day. They said all she remembers is that he came and left the facility. She said twice she didn't give him a shy bladder warning. And she admitted she may have given him permission to go to lunch, Your Honor. So you have to look at the record in totality. She had no credibility, and that's why the order of the board is not supported by substantial evidence, is because there is no relevant evidence that a reasoned mind would rely upon in reaching a conclusion. And that's why you've got to reverse the board. But, Mr. Armstrong, here's my problem that I hope you appreciate, which is that we are three layers removed from the facts that you say should have been interpreted in a different way. So I don't know that the appropriate standard at this stage is for us to look almost in the first instance at the transcripts of the hearing or considering the facts as though no one else has spoken to them. We have findings by the administrative law judge who took evidence, and he said that Ms. West told your client that if he left, that would be considered a refusal and that he left. And he found those findings to be the significant facts and also the fact that he had not produced a sufficient sample. He said those are the significant facts for the finding of refusal. I don't know that we have the authority as an appellate body to do anything other than credit those findings of fact. Judge Jackson, I respectfully disagree. I'll tell you why. I want to speak in the microphone so Judge Rogers can hear you. I beg your pardon? Yes, just make sure Judge Rogers can hear you. I can hear. Okay. Judge Jackson, I respectfully disagree for these reasons. You have authority under 5 U.S.C. 706-2A and B to reverse an administrative law decision that is not supported by substantial evidence. And this court in the Van Dyke case quoted in my brief says substantial evidence is evidence that a reasoned mind would accept as supporting a conclusion. And here there is none because she has no memory. The board said she had no memory. You cannot credit her testimony. I'm not asking her to be a trial court judge. I'm asking her to be an appellate court judge under 5 U.S.C. 706-2A. This decision is arbitrary, capricious, and a breach of discretion not supported by evidence and is contrary to law. Look at finding of fact number five. Finding of fact number five in the opinion is that when he didn't provide 45 milliliters, he refused. That is not true. That is not the law and never has been the law. That is not true. Just because he can't provide 45 milliliters of urine on the spot does not mean you're guaranteed a violation. And the board said it did. That's not right. That is only true after you're given the shy bladder warning. It's only true after you're given three hours. It's only true after you get 40 ounces of water. That never happened. So all I'm asking you to do, Judge, I'm not asking you to be a trial court judge. I'm asking you to be an appellate court judge and find that this record is not supported by substantial evidence to justify the conclusion rendered by the board. That's all I'm asking. May I continue? Sure. Okay. Ms. West testified that she was a float. She went from location to location and worked in a doctor's office for three years, during which time she did not administer drug screening. On direct examination, and this is finding of fact number six, she testified that when Mr. Pham returned, he would need a new referral form. If you return, you therefore have to leave. And under Pasternak, he had implied permission to leave. Judge Mullins made six findings of fact. One, this is a preemployment test. Two, Pham had not been trained in any drug testing policies of his prospective employer. Three, there was no requirement that Pham be trained. Four, Pham provided a specimen that was not a sufficient quantity. Five, Pham was advised that providing a specimen of less than 45 milliliters was a refusal, which we've already covered, the fact that that's not right. That's wrong. That's not the law. It never has been. And number six, Pham was advised if he left, he could return with a new referral form. The board found this was confusing. The board found, number one, Ms. West had no independent recollection. That's at Joint Appendix 534. The board found that all she remembered is he came to the facility and left. That's at Joint Appendix 535. Twice she admitted she did not remember giving Pham a shy bladder instruction. That's at Joint Appendix 532 and 535. And number four, West admitted it's possible Pham asked if he could go to lunch. That's at Joint Appendix 536. Reducing the sanction from a revocation to a suspension, the board observed, first, there is no clear evidence in the record. The test collector urged respondent to drink up to 40 ounces of fluid to produce another sample within the three-hour period, which is part of the shy bladder process. That's at Joint Appendix 559. Second, as discussed above, the law judge found the respondent was advised that if he left, he would have to have another confirmation form when he returned. If so, facto, if you return, you first must leave. The board went on to say there existed ambiguity surrounding the consequences of his departure. There existed ambiguity surrounding the consequences of his departure. And the administrator did not prove that the test collector explained the shy bladder procedures. The unique circumstances of this case lead us to reduce this respondent's sanction to a 100-day suspension. That's at Joint Appendix 560. The board further made this note. Quote, the board believes that the discussion between the test collector and respondent would create confusion for a reasonable person about whether they could return for a new drug test as long as they obtained a new form and thus would have interpreted it to mean that a new test was possible. So, Mr. Armstrong. Yes. I've read the record. I've read the opinions that you're reading to us. What I'd like to ask you is about the mitigation of the sanction by the NTSB. Yes. Is it your view that they have the authority to do that, to change this? So it's not an up or down proposition. Yeah, and I'll tell you why. Under 49 U.S.C. 4479D3, 49 U.S.C. section 4479D3, it specifically says the board shall not defer to the FAA on findings of fact. It specifically says that. I know that because I helped author the pilot's bill of rights that was passed by the Congress in 2012. Right. I'm not asking you about findings of fact. I'm asking you about the sanction. Yes. So assuming that the board agreed with the ALJ on the facts, and I know that you dispute and you say there isn't substantial evidence, but if we disagree with you on that and we find that the board rightly upheld the refusal determination, what authority does it have to say, nevertheless, we think Mr. Pham was confused, and as a result, instead of the FAA's suggested sanction or proposed sanction, we're going to do something else? Is there legal authority somewhere for them to mitigate a sanction after they have found that there has been a violation? Millennium Propeller Systems. Administrator versus Millennium Propeller Systems. 2006 Westlaw 979342. This is a 2006 case. Here's what the board said in Millennium. We disagree with the administrator's analysis when such deference is required. A lack of qualification is a finding of fact that does not command deference. So the board was not required to defer to administrator's finding of revocation. They had absolute authority to reduce the sanction from a revocation to a suspension, Your Honor. And that case, if I read it, is about the sanction and not a finding of fact? Millennium Helicopter was a case where, yes, the FAA took the position that they had to go along with their finding. The board had to defer to the FAA, and the board said, no, we don't. No, we don't. So in my opinion, administrator versus Millennium Propeller Systems is dispositive of the question you just asked me, Your Honor. All right. So recognizing the board found, number one, that West had no independent recollection of the drug test. Number two, all she remembered is that he came and left. And three, it's possible FAM asked West if he could go have lunch. The board's rejection of FAM's testimony and the crediting of West's testimony is arbitrary and capricious under 5 U.S.C. 7062A. It requires that the order be vacated. Your Honor, I know you wanted to reserve some time for rebuttal. Yeah, I did reserve five minutes, Your Honor. If I use ten minutes? You used quite a bit more than ten minutes, but we'll give you a little bit of time for rebuttal. Okay. If you'd like, unless my colleagues have further questions for you at this time. Thank you, Your Honor. Thank you. Okay, we'll hear from the government now. Mr. Koppel. Good morning, Your Honors. May it please the Court, I'm Josh Koppel on behalf of the FAA. I want to make sure to address the FAA's petition for review and the NTSB's reduction of Mr. FAM's sanction. But I'll start with FAM's petition. Pilots have a responsibility to acquaint themselves with all FAA regulations in the light of them, to be proactive when there's a problem, to be cautious. And if Mr. FAM couldn't immediately produce a sufficient urine sample, the FAA could reasonably expect him to stay at the facility, ask questions, and figure out what to do next, particularly when he was told that leaving would constitute a refusal. But he didn't do that. The FAA reasonably takes this conduct seriously. Not only did FAM's actions demonstrate a lack of judgment on his part, but they undermined the integrity of the drug testing program. Was there a legal requirement for Ms. West to give him a shy bladder instruction? This Honorable Court will now take a brief recess. This Honorable Court is in session again. Be seated, please. Welcome back, Mr. Topol. Why don't we please proceed where we were. Sure. I'll pick up with Judge Jackson's question about the shy bladder regulation. The regulation requires the test collector to urge the employee to drink up to 40 ounces of water reasonably distributed over three hours. This isn't a shy bladder warning or a particular set of instructions. And to be clear, the test collector testified that she believed that she did deliver this instruction and urged Mr. FAM to drink water. She just couldn't recall for certain that she did. So then TSB found that there was not clear evidence that she had delivered that instruction. What difference does that make in terms of the finding with respect to refusal? It doesn't make any. The refusal regulation is a separate regulation which says that it's a refusal if the employee leaves the testing facility before the testing process is complete. So it doesn't require the test collector to first have delivered any particular warning or any particular instruction. And then TSB certainly recognized that it made a finding that Mr. FAM refused the drug test by leaving the testing facility. And that the potential failure of the test collector to urge Mr. FAM to drink water was really irrelevant to that finding. Can I ask what would have happened in a situation? I know that's not the case that we have before us. But suppose he were to ask before he left. I've got plans. I've got lunch plans. I just want to make sure that when I come back I can restart the test. And if the person who's working with him says, yeah, I think you're going to have to start over. But yes, you can restart the test. And he leaves with that kind of misperception. How would things have played out? Would it still be a refusal to finish the test? So as your Honor mentioned, that is not the case. Ms. West testified that she told him he could not leave to go to lunch. Right. I think that it would still be a refusal. I think that the FAA, in its enforcement discretion, in its prosecutorial discretion, probably would not take enforcement action in that case. But it would be a refusal under the regulation. Can I ask you, if the FAA chooses to exercise its enforcement discretion to bring charges, does it always ultimately require revocation in a situation in which those charges are proven? Or does it have similar discretion about what the sanctions should be based on the particular facts and circumstances of the case? The regulation permits the FAA to suspend or revoke the certificate of an airman who has refused a drug test. The FAA's policy is that generally revocation is the appropriate remedy. And the NTSB has always, until this case, the NTSB has always affirmed the revocation of an airman's certificates after he's been found to have refused a drug test. And the NTSB has explained that unless revocation were the predictable consequence for an airman who refuses a drug test, an airman could simply evade a positive drug test result by refusing to. I understand, but one thing I noticed was that in the FAA's enforcement memo, emergency order, they seem to rely on at least, at one point, a fact. And I'm looking at A2. The collector explained that you would have up to three hours to provide a urine sample. So one of the facts that underlies their enforcement is that the shy bladder instruction was given. We then proceed to the actual proceeding. The ALJ says the evidence isn't clear. The NTSB doesn't rely on that in terms of the finding of refusal. And so I'm wondering whether there's ever been a circumstance or there could be a circumstance in which after the NTSB ultimately determines that that warning or that instruction was not given, they send the matter back to the FAA for a determination of whether they intend to continue with the revocation or do a suspension. I'm not aware of that situation. The ALJ already did not make this finding that West had given the shy bladder instruction. But the FAA continued to pursue its position before the NTSB on appeal that revocation was the appropriate remedy. So the FAA, even on the set of facts that the ALJ found, without appealing any adverse findings that there really was none by the ALJ, the FAA continued to take the position that revocation was the appropriate remedy. And so that position in itself, in addition to this original decision in the emergency order of revocation, is entitled to deference. So tell me about that. Why do you say that? I thought the statute was changed in terms of requiring the NTSB to give deference to the FAA. So it was, but the legislative history is clear. When the Pilot Bill of Rights removed that deference language, the Congress only did that because it understood that under the prevailing case law, under Martin v. Occupational Safety and Health Review Commission, that the NTSB was nevertheless bound to defer to the FAA's interpretations of regulations. And therefore, the statutory language was superfluous. And, you know, in addition, with regard to sanction, right, it's not pursuant to the statute, but rather pursuant to Supreme Court case law and this Court's case law, that a court is bound to defer to an agency's determination of the appropriate sanction. Because it's for the agency to figure out which sanction is best going to accomplish the purpose of the statute. So here, it's for the FAA to determine whether revocation or suspension is best going to ensure the safety of the airways, best going to deter other pilots from refusing drug tests or evading positive drug tests. So what is the role of the NTSB in this scheme, you say? Because the FAA was also acting as, quote unquote, the prosecutor, right? That's right. For this purpose. So the NTSB has an independent adjudicatory function, and as the Supreme Court said in Martin, you know, with regard to a separate scheme, but the NTSB's role is akin to that of a court reviewing agency action. But a court would ordinarily take into account the sanction and be the one to impose it, so. Well, not with regard to an agency enforcement action. So in American Power and Light, which we cite in our brief, the Supreme Court said that the appropriate standard of review is whether the sanction is unwarranted in law or unjustified on the facts. So a court has to defer to the agency's sanction unless it's unlawful. Here, the regulation permits the revocation of a pilot's certificate if he's refused a drug test or if it's unreasonable. Here, the FAA's determination that revocation was appropriate is certainly not unreasonable for all these reasons that I've been mentioning. And, you know, the specific deterrence of Mr. Pham certainly, or the possibility that Mr. Pham was trying to evade a positive drug test result, or the broader deterrent purpose of ensuring that other pilots don't try to evade a positive drug test result by simply refusing a drug test. So is your view that the board didn't give the deference or that they did give the deference, but then they erred in their conclusion? The board recognized that it had to defer to the FAA, but it didn't give the deference, I would say. You know, it cited that deferential standard. It cited Marden, but it simply didn't apply deference. It didn't consider, you know, the FAA's reasons for imposing revocation. It didn't explain why revocation would be unreasonable in these circumstances. That's the standard that it was bound to. Well, it did explain – what do you mean it didn't explain why revocation would be unreasonable? Because we know why the NTSB thought that revocation shouldn't be imposed here. Right. The NTSB explained why it thought that a 180-day suspension was the most appropriate remedy, but it didn't explain why revocation would not be an appropriate remedy or a reasonable remedy. And to be clear, even the two reasons that the NTSB cited for why a 180-day suspension was perhaps, in its view, a better remedy really doesn't hold up. You know, so, as the NTSB itself recognized, the failure of the test collector, the possible failure of the test collector to give the shy bladder instruction, you know, doesn't mitigate, doesn't excuse the airman's refusal and his choice to leave the testing facility before the testing process was complete. But in fairness, I mean, I'm looking at A560, where this is in the NTSB's decision, where it says the interaction of the mitigating factors compounded in a way that revocation is not a reasonable sanction. And the way they describe it and discuss it, it sounds as though they felt, looking at the facts, that Mr. Pham may have been confused by the test collector into believing that he could leave, notwithstanding the fact that she may have told him that leaving would be a refusal. So you're correct that the NTSB said it wasn't – it was not a reasonable sanction. I don't think that the NTSB really applied the correct deferential standard. It didn't go through the FAA's reasoning and explain why – I don't think it gave sufficient reasons for why revocation would be unreasonable. So this is part of the reason why I asked the question earlier about the situation in which the person who leaves is actually told that the person they're working with – by the person they're working with, that, yeah, I think if you come back, I think you should be able to restart. Because in that situation, you could still say the same thing you're saying now, which is that the default remedy in a situation in which there's a refusal to leave – a refusal to stay, rather, sorry, which even that hypothetical would implicate, as you said, the default sanction would be revocation. And so you could just say, well, look, that's just what the FAA says is the sanction is revocation. And so it would be – it wouldn't be within the bounds of the NTSB's discretion to overturn a revocation order. But it seems like it would be. I think that certainly the NTSB has that power in the appropriate case where it truly is unreasonable. I don't think the revocation here was unreasonable. And to be clear, I don't think – Mr. Pham, when he testified at the hearing, did not testify that he was confused by this instruction that he might be able to return with a new test order form. What he testified was that he came back with an insufficient urine sample, said, I've got to go. I'd like to go to lunch. Is that all right? And the test collectors said, sure, absolutely, go ahead. And the ALJ rejected that testimony as not credible, and the NTSB affirmed that credibility determination. So this argument that he was confused by this other statement, and then there was perhaps some implicit permission to leave, that's really not something that Mr. Pham testified to. That's something that the NTSB came up with. And while perhaps that would itself be a reasonable determination, and perhaps a 180-day suspension might be a reasonable sanction, that's not the standard here. Are you asking us to direct the board to affirm the sanction, or are you just asking us to vacate and remand for the board to afford deference? I think that the evidence and arguments before this court are sufficient for the court to hold that the FAA's determination to revocation is appropriate was a reasonable determination, and therefore to affirm the FAA's revocation order. Could I just ask you, is part of your argument that, to the extent after the statutory change in the legislative history, the board applied the wrong deferential standard in the sense that the FAA has taken the position that pilots and this particular job for which Mr. Pham was applying, particularly sensitive area, and therefore any failure by the pilot to adhere with the plain text of the regulation, regardless of whether he has been advised of the shy bladder point, is grounds to revoke because, and one of the FAA commissioners wrote that concurring opinion, emphasizing the point, the burden is on the applicant to know the regulation, sort of ignorance of the law here is not an excuse given the nature of the position for which his pilot license entitles him. So is that what you meant by saying the board had a deference standard, but it simply didn't take cognizance of the FAA's total opinion as to how this regulation should be applied? That's absolutely correct, Your Honor. Among other things, as you mentioned, the airman is charged with knowledge of the regulation, so he should have known that when he left the testing facility, aside from the fact that he was expressly informed by the test collector, he should have known anyway that when he left the testing facility before the testing process was complete, that would be deemed a refusal. I'm just focusing on the fact that the FAA's view is one of, I'll call it strict liability here. There sort of are no excuses. You either comply with the plain text of the regulation, and it's your burden, and you can ask the test administrator, well, don't you have to, you know, advise me of the shy bladder and my options. But I thought the FAA's position was it's the applicant's burden here, so that that's what the board failed to address when it said, well, we think there may have been some confusion here. In other words, the burden to clarify confusion could be on the applicant. And to the extent he asked questions and she gave them, he knew at least that if he left, he'd have to have a new application. And that if he left without completing the test, giving the right amount of the sample, then that would be deemed a refusal. I see my time is up, if I may. Yeah, of course. You know, the board, the board did see it, that's right, as Mr. Pham's burden to establish any affirmative defense. And it also, you know, I don't think that there, I don't know that I can talk about the burden to, you know, whose burden it was to make clear on what his obligation was at this point, because the regulation really is, I believe, one of strict liability. You know, once he leaves the test, the testing facility before the test process, I think that's a refusal. But, you know, in any event, strict liability really is not an issue here because he was expressly told that what he was about to do with. But strict liability is, it goes to whether he committed a violation. What I'm trying to understand is the sanction and who gets to decide what should happen as a result of his violation. So, assuming we agree with you that the facts are such that the violation was established, as the NTSB found, I had understood you to be arguing that the NTSB had no choice but to apply the sanction that the FAA recommended. And now I hear you saying something different, which is the NTSB might do something other than what the FAA recommended, but only if they find that the FAA's sanction is unreasonable. Is that what you're saying? Yes, Your Honor. The NTSB is required to defer to the FAA Administrator's choice of sanction and review the sanction for reasonableness. So, if the FAA Administrator's sanction in a case is completely unreasonable, the NTSB is permitted. All right. And they say it's unreasonable in light of the two mitigating facts. So, if I now, as a Court of Appeals judge, we as a body are looking at this, how are we, what's our level of scrutiny of their determination that it was unreasonable given those two mitigating circumstances that they mentioned? This Court has said that the NTSB acts contrary to law where it does not apply the appropriate level of deference. So, if this Court finds, as it should, that the FAA Administrator's choice of sanction was reasonable, then the NTSB erred and acted contrary to law by finding the opposite. But we don't review that de novo. I mean, I take it that, suppose if the agency says, we're not applying any deference at all. We're just addressing de novo whether the sanction was appropriate. Well, then that would be an error of law that we would just overturn and we'd say, no, you need to apply deference. But as Judge Jackson says, they at least invoked deference. And, I mean, you could have an argument that, well, even if they invoked it, they didn't apply it, so it's effectively the same thing that I just laid out, and that may be part of your pitch. But if they, in fact, invoked it and applied it, but just applied it in a way that on review you want to urge is problematic, then I take it our burden would be to say it has to be unreasonable for the board to determine that the sanction was unreasonable. And that's conceptually possible, but isn't that the way we would look at it? No, I believe this court looks at the FAA Administrator's determination in the first instance and looks at it for reasonableness. If the court looks at Garvey v. NTSB, that was not a case involving a sanction. It involved competing interpretations between the FAA and the NTSB over the meaning of a regulation. And the NTSB found that the FAA's interpretation of the regulation was unreasonable. This court looked at the FAA's interpretation of the regulation in the first instance, found that it was reasonable, and therefore reversed the NTSB. So we just step into the shoes of the NTSB. We don't review the NTSB's determination. Unless there are further questions, we ask that the court deny Mr. Kamm's petition for review and grant the FAA's. Thank you, Mr. Koppel. Mr. Armstrong, we'll give you three minutes for rebuttal. If it pleases the court, Judge Farnason, and I didn't pronounce your name correctly, obviously. What I've got here for you, you asked about leaving with permission, if I recall the question correctly. In Pasternak number 2, this is found at 513 Fed Appendix 1. This court wrote, however, the FAA concedes that leaving with permission does not constitute a refusal. So your question was, if I ask for permission to go to lunch and come back, they said it's not a refusal in Pasternak 2. With regard to deference, 49 U.S.C. 4479 D3 reads, when conducting a hearing under this subsection, the board is not bound by findings of fact of the administrator. With regard to the question by Judge Rogers about the street liability... Well, let me ask you then, what about Judge Jackson's question about the legislative history? Do we just ignore that? Judge Rogers, I don't appreciate your question. What are you asking me? What didn't you appreciate about the question? I don't know what you're asking me. I don't know what your question is. The legislative history, the Palace Bill of Rights... Listen, 49 U.S.C. 4479 D3 used to say the board must defer to the policies of the administrator. That language was abolished. I helped write the language that abolished it. I know about that. The point, I think, is that it was abolished, and Congress twice said it was abolished because, in light of Martin, it was deemed to be superfluous, not because Congress was changing the standard. So my question to you is, in light of that, what is the court to do? Just to ignore that legislative history? The statute, Your Honor, says the board is not bound by findings of fact of the administrator. That's the current statute. So your answer is we look only at the statutory text, period? Yes. Thank you. That's my position. Okay. Next. Judge Jackson, about sanction. 14 CFR 120.11B2, refusal by the holder of a certificate issued under Part 61 of this chapter to take a drug or alcohol test required under the provisions of this part as grounds for suspension or revocation. That's what the statute says. That's what the regulation says. What else have we got? Lacey Jones, the Special Investigations Branch Manager. Your time's up, Mr. Armstrong. Can I just ask you to bring it to a close? Beg your pardon? Your time's up. All I can say is that we respectfully submit that there is no evidence to support the finding of a violation. The record demonstrates to the contrary. We ask that the board's order be vacated. Thank you, Your Honor. Thank you, counsel, unless my colleagues have further questions for you. Thank you, counsel. Thank you to both counsel. Thank you very much. We'll take this case under submission. Thank you.
judges: Srinivasan, Rogers, Jackson